# IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

VIVEK HATTI                                )
376 Broadway Apt. 7B                       )
New York, NY 10013                         )
                                           )
    Plaintiff,                             )
                                           ) Civ. No. 2015 CA 006954 B
    v.                                     )
                                           )
CPA GLOBAL SERVICES US INC                 )
2318 Mill Road                             )
12th Floor                                 )
Alexandria, VA 22314                       )
                                           )
Serve: CPA Global Services US Inc.         )
       Corporation Service Company         )
       2711 Centerville Rd Suite 400       )
       Wilmington, DE 19808                )
                                           )
JOHN DOES 1-10 (*being the fictitious names of
persons who are not presently known to Plaintiff*),
                                           )
    Defendants.                            )
_____)

## COMPLAINT AND JURY DEMAND

Plaintiff Vivek Hatti, by his attorney, alleges for his Complaint herein:

## PRELIMINARY STATEMENT

1. This is a wage theft and discrimination case. Plaintiff Vivek Hatti was employed by Defendant CPA Global Services US Inc. and/or CPA Global North America ("CPA Global") from May 11, 2009 until January 21, 2015. During his employment, Plaintiff was subjected to disparate treatment by receiving less wages than similarly situated employees, disparate job assignments, and was not considered for a promotion and position (whose job duties Mr. Hatti had been performing successfully) that became available in January 2015. Even more egregious, however, CPA Global refused to pay Mr. Hatti commissions that were contractually owed to Mr.

1

Hatti. When Mr. Hatti complained about not receiving the wages owed to him and the discriminatory conduct, CPA Global took negative action against Mr. Hatti, including unilateral reductions of his wages and eventual termination. Accordingly, this is a wage theft action brought pursuant to the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq.* for the unpaid commissions owed to Mr. Hatti. Furthermore, this is an action for Defendant's unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful discrimination, harassment, and retaliation against Plaintiff because of his race, national origin, and sexual orientation, and because of his repeated complaints about such unlawful discrimination, harassment, and retaliation, in violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 et seq. ("D.C. Human Rights Act").

Plaintiff, through his undersigned counsel hereby alleges the following:

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this claim pursuant to D.C. Code § 11-921(a)(6) and D.C. Code § 2-1403.16.

3. This Court has personal jurisdiction over the Defendants pursuant to D.C. Code § 13-423(a)(1)-(4).

4. Mr. Hatti lived in and was employed in the District of Columbia during all times relevant to this action, and therefore the acts alleged in this Complaint occurred in the District of Columbia and therefore venue is proper in this district.

## PARTIES AND RELEVANT PERSONS

5. Plaintiff Vivek Hatti is an Indian American, gay individual who recently moved from the District of Columbia as a result of his termination and is currently residing in New

2

York, New York. Mr. Hatti was employed by CPA Global from May 2009 until January 21, 2015. Mr. Hatti had a contract of employment with CPA Global, for which the work was to be performed in the District of Columbia. At all times relevant, Mr. Hatti was employed in the District of Columbia. Mr. Hatti was interviewed by CPA Global in the District of Columbia, maintained his primary office in the District of Columbia, and performed most, if not all, of his work for CPA Global in the District of Columbia. Mr. Hatti is an employee as defined by D.C. Code § 32-1301 and D.C. Code § 2-1401.02.

6. Defendant CPA Global is a for-profit corporation formed and organized under the laws of Delaware with its principal place of business located at 2318 Mill Road, 12th Floor, Alexandria, VA 22314. CPA Global conducted and conducts substantial business activities in the District of Columbia. At all times relevant herein, CPA Global employed Plaintiff in the District of Columbia. At all times relevant herein, CPA Global maintained significant operations and services for its clients and customers in the District of Columbia. As a result, at all times relevant herein, CPA Global procured significant revenues from its operations and business activities in the District of Columbia. Defendant CPA Global is an employer as defined by D.C. Code § 32-1301 and D.C. Code § 2-1401.02.

7. Upon information and belief, defendants John Does 1-10 are fictitious names of persons who are not presently known to Plaintiff who were employed by CPA Global or acted as representatives or agents of CPA Global.

## FACTS COMMON TO ALL COUNTS

8. Mr. Hatti began working for CPA Global on or about May 11, 2009 in the position of Senior Manager, Legal Services. In this capacity, Mr. Hatti's primary duties were to help with the legal services outsourcing division's operations, delivery of work product, client engagement,

3

and business development. At that time, Mr. Hatti received an annual salary as his compensation plus bonus and other benefits. The terms of Mr. Hatti's employment as the Senior Manager, Legal Services, as well as his detailed job duties, were memorialized in the offer letter signed and dated on or about May 5, 2009.

9. In or about March 2010, Mr. Hatti was assigned to manage a new client, a leading global financial services company, for CPA Global. Mr. Hatti participated in the business development pitch to this client, led negotiations for the master services agreement with this client, led the response to the client's inspection of CPA Global's operations facility located in Washington, DC, and set up and managed the CPA Global operations team that started delivering work to this client from Washington, D.C.

10. In or about May 2010, Mr. Hatti was promoted to the Business Development Team in the position of Account Director, Legal Services Outsourcing. In his role as Account Director, Mr. Hatti's new compensation was an annual salary in addition to commissions and other benefits. Specifically, CPA Global was required to pay Mr. Hatti a commission of 1% of the revenue of contracts for new clients and existing clients. Leah Cooper, the head of the LSO division, encouraged Mr. Hatti to take the Business Development position because she felt that Mr. Hatti was very good with clients and would excel in the position. She was correct.

11. In the first fiscal quarter under the commission based compensation, Mr. Hatti received commissions in the amount of 1% of the revenue of contracts for new clients and existing clients pursuant to the commission plan agreed to in May 2010.

12. On August 1, 2011, CPA Global amended its written agreement with Mr. Hatti in relation to the commission based compensation. Specifically, after August 1, 2011, the commission was "based on the actual amount of Gross Income booked during the financial year"

4

and "paid for revenue associated with new contracts for new clients and new contracts for existing clients" at the rate of 3.5% up to the quota and 5% for all amounts over the quota ("Commission Plan Contract"). This agreement remained in effect until Mr. Hatti was terminated on January 21, 2015.

13. On August 30, 2011, Mr. Hatti received his 4th Quarter Commission Statement for FY10-11. CPA Global paid to Mr. Hatti the commissions owed to him under the Commission Plan Contract. In that email containing the 4th Quarter Commission Statement, Mr. Jeff Maddox wrote to Mr. Hatti, "Attached is a spreadsheet detailing your 4th quarter commission and KPI bonus. This will be in your September 15 check. Congratulations and thanks for all of your hard work."

14. In December 2012, without any amendment to the Commission Plan Contract, CPA Global began paying Mr. Hatti a reduced commission. The effective commission was reduced to 2.65% despite the fact that CPA Global agreed to pay Mr. Hatti a 3.5% commission. Moreover, CPA Global unilaterally changed how it calculated the commission, no longer basing commissions on gross income as it had agreed.

15. Even more egregious, in January 2013, CPA Global transferred ownership of Mr. Hatti's Legal Services Outsourcing ("LSO") accounts to other members of the sales team (all who were white and straight), despite the fact that Mr. Hatti had acquired and/or successfully managed the accounts. At this time, the only account retained by Mr. Hatti was the global financial services company account described in paragraph 9 above. CPA Global then further stated that it was unilaterally reducing Mr. Hatti's commission rate to 1% up to quota and 1.5% after the quota was reached. Mr. Hatti's job duties and responsibilities remained the same even though CPA Global (1) had substantially reduced Mr. Hatti's compensation and (2) had

5

transferred ownership of all but one of his LSO accounts in January 2013.

16. Nevertheless, Mr. Hatti continued to perform his job duties and responsibilities as he had done in the past, and continued to do so until his termination. Specifically:

   a. For all of the LSO accounts that had been taken away from Mr. Hatti, he was still required to be the Account Manager in substance and practice by still performing all job duties associated with those accounts, even though CPA Global was now paying Mr. Hatti's commissions to his coworkers.

   b. Despite performing all of the same and similar job duties and responsibilities as the other sales managers and professionals, Mr. Hatti was paid far less than the other members of the sales team, whose commissions were in the range of 5% to 13% of sales. Once Mr. Hatti's accounts/commissions were transferred to other members of the sales team, those other coworkers were paid a rate far higher than Mr. Hatti.

   c. For the global financial services company account described in paragraph 9 above, Mr. Hatti's commission, while he was the formal account owner, remained far less than what the other members of the sales team were getting (all who were white and straight). Once the account was formally transferred to a new account owner in the sales team in August 2013, the new account owner immediately received commissions of approximately 10% of sales on the account—far higher than what Mr. Hatti ever received from CPA Global. Even after the formal account ownership change, Mr. Hatti continued to be the Account Manager in substance and practice for this particular client.

17. In March 2013, Mr. Hatti received his 2nd Quarter FY12-13. The effective commission rate was .847% rather than the 3.5% under the contract.

18. Once again, on August 1, 2013, CPA Global further reduced Mr. Hatti's commission to .5% in violation of the Commission Plan Contract. Mr. Hatti once again complained to the SVP of Sales for North America, the VP of Human Relations for North America, and the VP of LSO about his reduced commissions in violation of his contract, and for the unequal pay compared to similarly situated employees. The SVP of Sales for North America explained that the bulk of what Mr. Hatti had been getting in commissions needed to be spread over several individuals, including himself, the VPs for the East and West Coasts, and the VP of

6

LSO. In other words, the SVP of Sales for North America explained that Mr. Hatti's wages had to be distributed to his straight, white male coworkers. Mr. Hatti also directly complained to the VP of LSO and VP for Human Relations about his unilaterally reduced commissions and the discriminatory nature of the pay. At this time, CPA Global further retaliated against Mr. Hatti by transferring his last remaining account (account described in paragraph 9 above) and accompanying commissions, to his coworkers.

19. Mr. Hatti's commissions continued to be unpaid in their entirety until his termination on January 21, 2015. In total, CPA Global failed to pay Mr. Hatti at least $671,428.00 in commissions owed to him

20. Mr. Hatti complained about the formal changes of account ownership and reductions in his pay to the Senior Vice President ("SVP") of Sales for North America the Vice President ("VP") of Human Relations for North America, and the VP of LSO. Mr. Hatti first complained in January 2013. He further complained repeatedly during the Spring of 2013, again in August 2013, and continued to do so thereafter until his termination. Rather than address Mr. Hatti's concerns, CPA Global instead retaliated against Mr. Hatti by reassigning Mr. Hatti's accounts/commissions to his coworkers, downgrading his compensation, and persisting in efforts to wean all LSO accounts away from Mr. Hatti. The retaliatory conduct ultimately culminated in CPA Global terminating Mr. Hatti on January 21, 2015.

## COUNT I
## DISCRIMINATION AND DISPARATE TREATMENT IN VIOLATION OF THE DC HUMAN RIGHTS ACT, D.C. CODE §§ 2-1401 *et seq*.

21. Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

22. Defendants discriminated against Plaintiff on the basis of his race, national origin, color, and sexual orientation in violation of D.C. Code §§ 2-1401 *et seq.* by denying him the

7

same terms and conditions of employment available to individuals who are not Indian American and/or gay, including but not limited to, subjecting him to disparate working conditions, job assignments, and denying him equal compensation to similarly situated employees.

23. By virtue of the discriminatory, harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff by the Defendants because of Plaintiff's race and the denial of equal opportunity, terms, conditions, and perquisites of employment, the Defendants violated the laws of the District of Columbia as set forth in D.C. Code §§ 2-1401 *et seq.*.

24. As a result of Defendants' discriminatory, harassing, reckless, unlawful, wanton and malicious conduct and the racially hostile environment Plaintiff suffered discrimination in violation of D.C. Code §§ 2-1401 *et seq.* including non-economic and economic damages.

25. By virtue of the foregoing, Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendant's employees and defendants to undergo discrimination and retaliation training, and any other equitable relief as the Court deems appropriate, all damages permitted by law, attorneys fees, costs and disbursements of this action.

26. WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) compensatory damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages, and (5) any other relief the Court deems proper.

## COUNT II
## RETALIATION IN VIOLATION OF THE
## DC HUMAN RIGHTS ACT D.C. CODE § 2-1402.61.

27. Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

28. By reason of the foregoing, Defendants retaliated against Plaintiff and thereby violated laws of the District of Columbia as set forth in D.C. Code §§ 2-1401 *et seq*.

29. The harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff, by the Defendants solely because Plaintiff made complaints of discrimination and objected to discriminatory conduct and/or participated in a claim of discrimination, or was a witness to discrimination; constitutes denial of equal opportunity, terms, conditions, and perquisites of employment and is retaliation with the meaning of the law of the District of Columbia by violating D.C. Code §§ 2-1401 *et seq*.

30. As a result of Defendants' harassing, reckless, unlawful, wanton and malicious retaliatory conduct Plaintiff suffered non-economic and economic damages.

31. Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring defendant's employees and defendants to undergo harassment, discrimination and retaliation training, and any other equitable relief as the Court deems appropriate.

32. WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages;, and (5) any other relief the Court deems proper.

**COUNT III**
**FAILURE TO PAY WAGES UPON DISCHARGE IN VIOLATION OF**
**D.C. WAGE PAYMENT AND COLLECTION LAW, D.C. CODE § 32-1303**

33. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

9

34. Mr. Hatti was terminated from him his employment with the Defendant on or about January 21, 2015. Defendants, however, willfully failed to pay Mr. Hatti all wages owed to him not later than the working day following such discharge in violation of D.C. Code § 32-1303.

35. Specifically, Defendants owe Mr. Hatti the 3.5% commissions (and 5% commission for all revenue over the "quota") that CPA Global was contractually required to pay to Mr. Hatti.

36. Pursuant to D.C. Code § 32-1303(4) Mr. Hatti is entitled to liquidated damages in the amount of 10% of the unpaid wages per working day after the day that wages were due or an amount equal to treble the unpaid wages, whichever is smaller.

37. Under D.C. Code § 32-1308, Plaintiff is entitled to costs of this action, including reasonable attorney fees. Costs shall also include expert witness fees, depositions fees, witness fees, juror fees, filing fees, certification fees, the costs of collecting and presenting evidence, and any other costs incurred in connection with obtaining, preserving, or enforcing the judgment.

38. WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants awarding (1) compensatory damages in the amount of unpaid wages; (2) liquidated damages in the amount of treble unpaid wages; (3) costs and attorney's fees; (4) punitive damages and (5) any other relief the Court deems proper.

**COUNT IV**
**FAILURE TO PAY WAGES IN VIOLATION OF**
**D.C. WAGE PAYMENT AND COLLECTION LAW, D.C. CODE § 32-1302**

39. Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

40. Under D.C. Code § 32-1302, "[e]very employer shall pay all wages earned to his

10

employees at least twice during each calendar month, on regular paydays designated in advance by the employer." Wages that must be paid at least twice a month on regular paydays, includes commission based wages.

41. Defendants violated D.C. Code § 32-1302 by failing to pay Mr. Hatti all of his earned wages, including wages for his contractually agreed upon commissions, at least during twice during each calendar month.

42. WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants awarding (1) compensatory damages in the amount of unpaid wages; (2) liquidated damages in the amount of unpaid wages; (3) equitable relief; (4) costs and attorney's fees; (5) punitive damages and (6) any other relief the Court deems proper.

## COUNT V
## BREACH OF CONTRACT
## AND BREACH OF GOOD FAITH AND FAIR DEALING

43. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

44. An express and implied contract existed between Mr. Hatti and CPA Global.

45. Pursuant to the contract, CPA Global was to pay Mr. Hatti a commission that was "based on the actual amount of Gross Income booked during the financial year" and "paid for revenue associated with new contracts for new clients and new contracts for existing clients" at the rate of 3.5% up to the quota and 5% for all amounts over the quota. This agreement remained in effect until Mr. Hatti was terminated on January 21, 2015.

46. Defendant CPA Global breached the contract by failing to pay Mr. Hatti the 3.5% commissions he earned (and 5% commission he earned for all amounts over the quota).

47. Defendant CPA Global further breached the contract by failing to pay Mr. Hatti

11

accrued wages the next working day following the discharge, and by terminating Mr. Hatti for unlawful purposes.

48.  As a direct result of the breach of contract and implied duty of good faith and fair dealing, and wrongful termination, Plaintiff was caused to suffer severe damages to be determined at trial.

49.  WHEREFORE, Plaintiff prays for relief in the form of a judgment awarding compensatory damages and any other relief the Court deems proper.

## PRAYER FOR RELIEF

50.  WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendant awarding punitive damages and any other relief the Court deems proper and just. Plaintiff prays for judgment against Defendants against Defendants, jointly and severally, by awarding (1) compensatory damages; (2) equitable relief, including back pay and front pay; (3) statutory liquidated damages; (4) costs and attorney's fees; (5) punitive damages, and (6) any other relief the Court deems proper

## JURY AND TRIAL DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

_____
Brendan Klaproth (D.C. Bar No. 999360)
Klaproth Law PLLC
406 5th Street NW
Suite 350
Washington, DC 20001
Telephone: 202-618-2344
Email: Bklaproth@klaprothlaw.com
*Attorney for Plaintiff*

# Superior Court of the District of Columbia
## CIVIL DIVISION- CIVIL ACTIONS BRANCH
### INFORMATION SHEET

Vivek Hatti

vs

CPA Global Services US Inc.

Case Number: __2015 CA 006954 B__

Date: __9/9/2015__

☐ One of the defendants is being sued in their official capacity.

**Name:** *(Please Print)* Brendan Klaproth  (DC Bar No. 999360)

**Relationship to Lawsuit**
☒ Attorney for Plaintiff
☐ Self (Pro Se)
☐ Other: _____

**Firm Name:** Klaproth Law PLLC

**Telephone No.:** 202-618-2344   **Six digit Unified Bar No.:** _____

☒ 6 Person Jury   ☐ Other: _____   ☐ 12 Person Jury

**TYPE OF CASE:**  ☐ Non-Jury   ☒ 6 Person Jury   ☐ 12 Person Jury
**Demand:** $ 5,000,000.00   Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____   Judge: _____   Calendar #: _____
Case No.: _____   Judge: _____   Calendar #: _____

**NATURE OF SUIT:** *(Check One Box Only)*

### A. CONTRACTS

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 15 Special Education Fees
☐ 10 Mortgage Foreclosure/Judicial Sale

☐ 07 Personal Property
☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☒ 13 Employment Discrimination

### COLLECTION CASES

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 16 Under $25,000 Consent Denied
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 18 OVER $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass
☐ 06 Traffic Adjudication

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 09 Harassment
☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

CV-496/Oct 14

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 04 Condemnation (Emin. Domain)
- ☐ 05 Ejectment
- ☐ 07 Insurance/Subrogation Under $25,000 Pltf. Grants Consent
- ☐ 08 Quiet Title
- ☐ 09 Special Writ/Warrants (DC Code § 11-941)
- ☐ 10 T.R.O./ Injunction
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA) (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify, Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 25 Liens: Tax/Water Consent Granted
- ☐ 26 Insurance/ Subrogation Under $25,000 Consent Denied
- ☐ 27 Insurance/ Subrogation Over $25,000 Pltf. Grants Consent
- ☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 30 Liens: Tax/ Water Consent Denied
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower
- ☐ 34 Insurance/Subrogation Over $25,000 Consent Denied

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage Certificate
- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as Judgment [D.C. Code § 2-1802.03 (h) or 32-1519 (a)]
- ☐ 20 Master Meter (D.C. Code § 42-3301, et seq.)
- ☐ 21 Petition for Subpoena [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a) (1) (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

_____  
Attorney's Signature

9/9/2015  
Date

CV-496/Oct 14

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Vivek Hatti
_____
Plaintiff

vs.                                     Case Number  2015 CA 006954 B

CPA Global Services US Inc.
_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Brendan Klaproth, Klaproth Law PLLC
_____
Name of Plaintiff's Attorney

406 5th Street NW, Suite 350                                  Clerk of the Court
_____
Address
Washington, DC 20001
_____    By _____
                                                        Deputy Clerk
202-618-2344
_____    Date  09/09/2015
Telephone
如需翻译請打电话 (202) 879-4828       Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

See reverse side for Spanish translation
Vea al dorso la traducción al español

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133



Vivek Hatti

_____
Demandante

vs.                                    Número de Caso: _____

CPA Global Services US Inc.

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Brendan Klaproth, Klaproth Law PLLC                         *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

406 5th Street NW, Suite 350                                 Por: _____
Dirección                                                          Subsecretario
Washington, DC 20001

202-618-2344                                                 Fecha _____
Teléfono
如需翻譯、請打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction   Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오    ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

VIVEK HATTI
Vs.                          C.A. No.   2015 CA 006954 B
CPA GLOBAL SERVICES US INC

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge MAURICE ROSS
Date:  September 9, 2015
Initial Conference: 9:00 am, Friday, December 11, 2015
Location:  Courtroom 100
           500 Indiana Avenue N.W.

Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc